UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division

Case No. _____

SOUTH BROWARD HOSPITAL
DISTRICT d/b/a MEMORIAL
HEALTHCARE SYSTEM,

    Plaintiff,

vs.

BLUE CROSS AND BLUE
SHIELD OF FLORIDA, INC.
and HEALTH OPTIONS, INC.

    Defendants.
_____/

## DEFENDANTS' NOTICE OF REMOVAL

Defendants Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") and Health Options, Inc. ("HOI") (BCBSF and HOI collectively, "Florida Blue"), pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, remove this action from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to the Ft. Lauderdale Division of the United States District Court for the Southern District of Florida, and in support thereof, state:

## BASIS FOR REMOVAL

1.    Florida Blue removes this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiff sues Florida Blue in its capacity as a person acting under a federal officer or agency for or relating to acts taken under color of such office.[1] Any remaining state law claims are within this Court's supplemental jurisdiction.

---

[1] In an effort to limit the removal of its claims, Memorial improperly split its claims into three separate actions: (1) Case No. 20-10731, the instant action, which alleges claims for services rendered to patients covered under Medicare Advantage plans governed by the Medicare Act; (2) Case No. 20-10727, which alleges claims for services rendered to patients covered under group health benefits plans governed by ERISA; and (3) Case No. 20-10729, which alleges claims for services rendered to patients covered under individual health insurance policies.

4844-5738-4647.10

## PROCEDURAL REQUIREMENTS

2. On June 30, 2020, Plaintiff South Broward Hospital District d/b/a Memorial Healthcare System ("Memorial") filed a complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, styled as *South Broward Hospital District d/b/a Memorial Healthcare System v. Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc.*, Case No. 20-10731 (the "State Court Action").

3. HOI was served with a summons and the complaint on July 16, 2020. BCBSF was served with a summons and the complaint on July 31, 2020.[2] Pursuant to 28 U.S.C. § 1446(b), Florida Blue timely files this notice of removal within 30 days after service of the summonses and complaints. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding the 30-day removal period is triggered by formal service); *Harrell v. Bank of Am., N.A.*, 813 Fed. Appx. 397, 399 (11th Cir. 2020) (same); *see also Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1203 (11th Cir. 2008) (holding the removal period expires 30 days after service on the last-served defendant).

4. Pursuant to 28 U.S.C. § 1446(a), attached as **Composite Exhibit A (1-12)** are copies of all process, pleadings, and orders served on Florida Blue or filed in the State Court Action as of the date of removal, except (i) Exhibit A to the complaint, the Hospital Services Agreement between HOI and Memorial (the "HOI Hospital Services Agreement"), (ii) Exhibit B to the complaint, the Medicare Advantage Amendment to the HOI Hospital Services Agreement (the "HOI Medicare Advantage Amendment"), (iii) Exhibit C to the complaint, the NetworkBlue

---

[2] Under Florida law, the sole method of service of a civil action on a health insurance company, such as BCBSF, is by serving Florida's Chief Financial Officer. *See* Fla. Stat. § 624.422; *see also id.* § 624.307(9). Service is effective upon the date the Chief Financial Officer makes the summons and complaint available to the health insurance company, "and the time for pleading prescribed by the rules of procedure [runs] from this date." Fla. Stat. § 48.151(1).

Hospital Services Agreement between BCBSF and Memorial (the "BCBSF Hospital Services Agreement"), and (iv) Exhibit D to the complaint, the Medicare Advantage Amendment to the BCBSF Hospital Services Agreement (the "BCBSF Medicare Advantage Amendment"), each of which Memorial served but did not file in the State Court Action because they are governed by confidentiality provisions.[3]

5. The United States District Court for the Southern District of Florida embraces the county in which the State Court Action is now pending and, thus, this Court is the proper forum for removal pursuant to 28 U.S.C. § 89(c) and 1441(a).

6. Defendants BCBSF and HOI are the only defendants named in the State Court Action. Thus, all defendants join in the removal of the State Court Action.

7. In accordance with 28 U.S.C. § 1446(d), a copy of this notice of removal is being served on Memorial and a copy also is being filed with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

8. A filing fee of $400.00 is being tendered to the Clerk of the United States District Court for the Southern District of Florida.

## STATE COURT ACTION

9. In the State Court Action, Memorial alleges Florida Blue improperly denied and underpaid claims for covered medical services rendered by Memorial to Medicare beneficiaries covered under Florida Blue's Medicare Advantage plans. *See* Compl. ¶ 1.

10. Memorial is a special tax district healthcare system. *See id.* ¶ 2.

11. BCBSF is a health insurance company. *See id.* ¶ 3.

---

[3] Pursuant to Local Rule 5.4, Florida Blue will promptly move the Court to authorize the parties to file under seal the HOI Hospital Services Agreement, the HOI Medicare Advantage Amendment, the BCBSF Hospital Services Agreement, and BCBSF Medicare Advantage Amendment.

3

12. HOI is a health maintenance organization ("HMO"). *See id.* ¶ 4.

13. Florida Blue is a Medicare Advantage Organization ("MAO") that has entered into contracts with the Centers for Medicare and Medicaid Services ("CMS") to administer Medicare benefits under Title XVIII, Part C, of the Social Security Act. *See id.* ¶¶ 5, 11.

14. Memorial and Florida Blue have entered into the HOI Hospital Services Agreement and the BCBSF Hospital Services Agreement (collectively, the "Hospital Services Agreements") and the HOI Medicare Advantage Amendment and the BCBSF Medicare Advantage Amendment (collectively, the "Medicare Advantage Amendments") (the Hospital Services Agreements and the Medicare Advantage Amendments are collectively the "Provider Agreements") governing Memorial's provision of covered services to Medicare beneficiaries covered under Florida Blue's Medicare Advantage plans. *See id.* ¶¶ 16-18, 26-28, 36, 44, 52, 62, Exs. A-D. In the healthcare industry, Memorial is referred to as a "participating provider."

15. Memorial asserts claims for services Memorial rendered as a participating provider "pursuant to [Florida Blue's] Medicare Advantage plans" to patients covered under Florida Blue's Medicare Advantage plans. *See id.* ¶¶ 1, 31-34.

16. Memorial alleges there are "thousands" of claims in dispute. *See id.* ¶ 31.

17. Count 1 purports to allege a cause of action against HOI for breach of the HOI Hospital Services Agreement and the HOI Medicare Advantage Amendment. *See id.* ¶¶ 35-42. Count 2 purports to allege a cause of action against BCBSF for breach of the BCBSF Hospital Services Agreement and the BCBSF Medicare Advantage Amendment. *See id.* ¶¶ 43-50. Counts 3 and 4 purport to allege causes of action against HOI and BCBSF for breach of the implied covenant of good faith and fair dealing under the Provider Agreements. *See id.* ¶¶ 51-70.

18.     In Counts 1 and 2, Memorial alleges: (i) Florida Blue is obligated to pay Memorial for "covered services" rendered to Medicare beneficiaries covered under Florida Blue's Medicare Advantage plans in the amounts agreed to in the Medicare Advantage Amendments; (ii) Memorial rendered services to Medicare beneficiaries "covered" under Florida Blue's Medicare Advantage plans; and (iii) Florida Blue breached the Medicare Advantage Amendments by "engag[ing] in a pattern and practice of improper claims processing practices." *See id.* ¶¶ 37-40, 45-48.

19.     According to Memorial, the "improper claims processing practices" include: (a) "denying payment and underpaying Memorial for covered services"; (b) "recovering contested overpayments"; (c) "failing to respond to Memorial's requests for authorization to perform medically necessary covered services"; (d) "failing to pay for medically necessary covered services that were appealed"; (e) "pending the processing and payment of claims and appeals"; and (f) "engaging in otherwise [unidentified] abusive and unduly burdensome claims processing practices." *See id.* ¶¶ 40, 48.

20.     In Counts 3 and 4, Memorial alleges: (i) the Provider Agreements incorporate Florida Blue's "claim processing policies and procedures" and "provider manual"; (ii) Florida Blue "has discretion to change or modify" the policies, procedures, and manual "subject to certain limitations" in the Provider Agreements; (iii) Memorial "reasonably relied" that Florida Blue would "pay and process claims" in accordance with Section 3 of the Medicare Advantage Amendments; and (iv) Florida Blue "unfairly frustrated the agreed-upon purpose" of the Medicare Advantage Agreements. *See id.* ¶¶ 53, 55, 58, 63, 65, 68.

21.     Memorial alleges Florida Blue "violat[ed] Memorial's reasonable commercial expectation" by: (a) failing to pay claims in accordance with the Provider Agreements; (b) using "unreasonable and/or illegal claims processing practices"; (c) unilaterally modifying "claims

5

processing policies and practices in an arbitrary or unreasonably [sic] manner"; and (d) "imposing unreasonable utilization review and medical necessity criteria."  *See id.* ¶¶ 56-57, 66-67.

## MEDICARE ADVANTAGE PROGRAM

22. The Medicare Act, 42 U.S.C. § 1395 *et seq.*, enacted in 1965, established a federally subsidized health insurance program primarily benefiting the elderly and disabled persons.  *See Heckler v. Ringer,* 466 U.S. 602, 605 (1984).  When it was enacted, Medicare consisted of two parts, Part A covering inpatient services, and Part B covering outpatient services.  Under Parts A and B, the federal government pays health care providers directly for covered services rendered to Medicare beneficiaries.  *See* 42 U.S.C. §§ 1395c-1395i-5, 1395j-1395w-6.

23. The Medicare Act is administered by the Secretary of the Department of Health and Human Services ("HHS"), which has delegated this responsibility to CMS.

24. In 1997, Congress enacted Part C, now known as "Medicare Advantage," to provide an alternative program for Medicare beneficiaries to receive Medicare benefits through private Medicare Advantage plans.  *See* 42 U.S.C. § 1395w-21-22.

25. Congress enacted Part C to expand the number and type of plans available to Medicare beneficiaries, improve access to quality healthcare services, and reduce costs by introducing competition and taking advantage of cost-reduction and risk-shifting measures used by private insurance companies.  *See In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 363 (3d Cir. 2012).

26. To administer Part C, CMS enters into contracts with private insurance companies, such as Florida Blue, referred to as "Medicare Advantage Organizations" or "MAOs."  *See* 42 U.S.C. § 1395w-27; 42 C.F.R. §§ 422.503, 422.504.

27. The contracts between CMS and MAOs "shall provide that the [MAO] agrees to comply with the applicable requirements and standards of [Part C] and the terms and conditions of payment as provided for in [Part C]." 42 U.S.C. § 1395w-27(a).

28. CMS makes monthly per-beneficiary payments to MAOs, which then take on the financial risk of serving Medicare beneficiaries. *See* 42 U.S.C. §§ 1395w-23, 1395w-25(b).

29. MAOs are subject to extensive federal regulation. *See* 42 C.F.R. §§ 422.1-422.2615; *see also* CMS Medicare Managed Care Manual, Pub. No. 100-16, *https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS019326* (last visited August 17, 2020).

30. MAOs must offer the same basic Medicare benefits available under Parts A and B. *See* 42 U.S.C. § 1395w-22(a)(1)(A); 42 C.F.R. § 422.100(a). MAOs also may offer certain supplemental benefits approved by CMS. *See* 42 C.F.R. § 422.100(c), (f).

31. The Medicare Act generally precludes coverage for medical services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury." *See* 42 U.S.C. § 1395y(a)(1)(A).

32. MAOs determine whether services are covered under Parts A and B of the Medicare Act. *See* 42 U.S.C. § 1395w-22(g)(1)(A).

33. In making coverage decisions, MAOs must comply with CMS's national coverage determinations, general coverage guidelines in Medicare manuals and instructions, and written coverage determinations of local Medicare contractors. *See* 42 C.F.R. § 422.101.

34. The Medicare Act includes a mandatory administrative appeal process for coverage determinations. *See* 42 U.S.C. §§ 405, 1395w-22(g), 1395ff, 1395ii.

35. MAO coverage determinations are subject to multiple levels of administrative review, including reconsideration by the MAO, reconsideration by an independent entity, hearing before an administrative law judge, and review by the Medicare Appeals Council. *See* 42 C.F.R. §§ 422.562, 422.578, 422.592, 422.600, 422.608.

36. CMS also prescribes requirements for relationships with participating providers, *see* 42 U.S.C. § 422.200-.224, and the provision of emergency services, *see* 42 U.S.C. § 422.113.

## FLORIDA BLUE'S CONTRACTS WITH CMS

37. Florida Blue has contracts with CMS to administer Medicare benefits to Medicare beneficiaries pursuant to Medicare Advantage plans under Part C of the Medicare Act. *See* Declaration of Amanda Iacovella ("Iacovella Declaration") ¶ 3 (attached as **Exhibit B**).

38. Attached as Composite Exhibits 1 and 2 to the Iacovella Declaration are Florida Blue's contracts with CMS (the "CMS Contracts"). *See id.* ¶¶ 4-6.

39. Under the CMS Contracts, Florida Blue "agrees to operate one or more [Medicare Advantage plans] . . . in compliance with the requirements of [the CMS Contracts] and applicable Federal statutes, regulations, and policies." *See* CMS Contracts, Art. II, § A.

40. Florida Blue "agrees to provide enrollees in each of its [Medicare Advantage] plans the basic benefits as required under 42 C.F.R. § 422.101 and, to the extent applicable, supplemental benefits under 42 C.F.R. § 422.102." *See id.*, Art. III, § A(1).

41. Florida Blue "agrees to comply with all requirements in 42 C.F.R. Part 422, Subpart M governing coverage determinations, grievances, and appeals." *See id.*, Art. III, § C(1).

42. Florida Blue's utilization policies and procedures "must reflect current standards of medical practice in processing requests for initial or continued authorization of services" including mechanisms to evaluate underutilization and overutilization. *See id.*, Art. III, § E(4).

8

43. The CMS Contracts also subject Florida Blue to comprehensive recordkeeping and reporting requirements. *See id.*, Art. VI.

## THE MEDICARE ADVANTAGE AMENDMENTS

44. In the Medicare Advantage Amendments, the parties "agree to comply with the Medicare Advantage contracting requirements established pursuant to federal regulation and/or CMS" and "acknowledge that CMS requires that [MAOs], and the persons and entities with which they contract, comply with certain requirements and include certain contractual provisions in contracts relating to the provision of items and services under the Medicare Advantage Program." *See* Medicare Advantage Amendments, § 2, Ex. 1.

45. "The Parties acknowledge and agree that [Florida Blue] shall oversee, and ultimately remain responsible and accountable to CMS for, those functions and responsibilities required of [Florida Blue] pursuant to all Laws [including] federal statutes, rules and regulations[,] . . . legally binding CMS orders, decrees, and instructions[,] . . . or requirements of governmental entities having jurisdiction over the execution, delivery, or performance of this Medicare Advantage Amendment." *See id.* at Ex. 1, §§ 2, 1(d).

46. Memorial "agrees to comply with and be subject to all applicable Medicare program laws, rules and regulations, reporting requirements, and CMS instructions as implemented and amended by CMS." *See id.* at Ex. 1, § 4(b).

47. Memorial also agrees to "perform all Covered Services in a manner consistent with and in compliance with . . . all applicable Laws, including . . . laws, regulations and CMS instructions relating to the Program; [Florida Blue's] contract(s) with CMS; and conditions of federal program participation." *See id.* at Ex. 1, § 12.

4844-5738-4647.10

48. The Medicare Advantage Amendments prescribe compensation only for services that are "covered under the applicable [Medicare Advantage plan]." *See id.* § 3; *see also id.* at Ex. 1, § 8; Ex. 2, Appx. 1 and 2.

49. Memorial "agrees to hold all Medicare Advantage Members harmless and prevent such Medicare Advantage Members from incurring financial liabilities for payment of fees that are the legal obligation of [Florida Blue] and shall accept [Florida Blue's] payment as payment in full, less any co-insurance, co-payments or deductibles" and "agrees not to bill, charge, collect a deposit from, or receive or demand other compensation or remuneration from a Medicare Advantage Member" including in the event of "nonpayment by [Florida Blue]" and "breach of agreement by [Florida Blue]." *See id.* at Ex. 1, § 5(a).

50. Memorial also "agrees to participate in and cooperate fully with [Florida Blue's] policies and procedures established pursuant to federal requirements and as required by CMS for grievances and appeals for Medicare Members." *See id.* at Ex. 1, § 10.

51. "To the extent that any provision of [the Medicare Advantage Amendments] conflicts with the provisions of applicable Law, regulations, CMS instructions, or conditions of federal program participation, the provisions of such applicable Laws, regulations, CMS instructions or conditions of federal program participation shall govern." *See id.* at Ex. 1, § 12.

### **FLORIDA BLUE'S MEDICARE ADVANTAGE PLANS**

52. Attached as Exhibit 3 to the Iacovella Declaration is a Medicare Advantage plan offered by HOI in 2016 (the "2016 HOI Medicare Advantage Plan"). *See* Iacovella Declaration ¶¶ 7-8. Attached as Exhibit 4 to the Iacovella Declaration is a Medicare Advantage plan offered by BCBSF in 2018 (the "2018 BCBSF Medicare Advantage Plan"). *See id.* ¶¶ 7, 9.

53.     The 2016 HOI Medicare Advantage Plan and the 2018 BCBSF Medicare Advantage Plan are representative of Florida Blue's Medicare Advantage plans offered to Medicare beneficiaries since 2015.  *See id.* ¶ 10.

54.     The 2016 HOI Medicare Advantage Plan and the 2018 BCBSF Medicare Advantage Plan define "covered services" as "the medical care, health care services, supplies, and equipment that are covered by our plan."  *See* 2016 HOI Medicare Advantage Plan at  39; 2018 BCBSF Medicare Advantage Plan at 46.  The plans "must cover all services covered by Original Medicare and must follow Original Medicare's coverage rules."  *See* 2016 HOI Medicare Advantage Plan at  39; 2018 BCBSF Medicare Advantage Plan at 46.  To be covered, services must be: (i) "medically necessary," defined as services that are "needed for the prevention, diagnosis, or treatment of your medical condition" and "meet accepted standards of medical practice"; (ii) "provided according to the coverage guidelines established by Medicare"; and (iii) for certain hospital services, "only if . . . approv[ed] in advance."  *See* 2016 HOI Medicare Advantage Plan at  57, 70, 78; 2018 BCBSF Medicare Advantage Plan at 61, 78, 86.  Excluded services include: (i) services "considered not reasonable and necessary, according to the standards of Original Medicare"; (ii) "experimental" services "determined by our plan and Original Medicare to not be generally accepted by the medical community"; and (iii) certain cosmetic surgeries and procedures.  *See* 2016 HOI Medicare Advantage Plan at  94-95; 2018 BCBSF Medicare Advantage Plan at 105-06.

## MEDICARE ADVANTAGE CLAIMS

55.     Since June 30, 2015, Florida Blue has denied claims submitted by Memorial for lack of coverage under Florida Blue's Medicare Advantage plans.  *See* Iacovella Declaration ¶¶ 11-12.  Because Memorial's complaint does not limit the denials it challenges, Memorial necessarily alleges Florida Blue denied these and the exemplar claims identified below.  *See*

11

*Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010) ("Because their complaints contest the global practices of United and do not identify any specific patient, we must assume that the providers are asserting at least some derivative claims.").

56. Attached as Composite Exhibit 5 to the Iacovella Declaration is an exemplar claim submitted by Memorial and corresponding remittance advice[4] denying the claim for lack of coverage under the 2016 HOI Medicare Advantage Plan. *See* Iacovella Declaration ¶ 13. As reflected in the remittance advice, HOI denied one claim line for lack of authorization and two claim lines because those services are inclusive of the services for which there was no authorization. *See id.*

57. Attached as Composite Exhibit 6 to the Iacovella Declaration is an exemplar claim submitted by Memorial and corresponding remittance advice denying the claim for lack of coverage under the 2018 BCSBF Medicare Advantage Plan. *See id.* ¶ 14. As reflected in the remittance advice, BCBSF denied this claim due to coverage restrictions in the 2018 BCBSF Medicare Advantage Plan. *See id.*

## FEDERAL OFFICER REMOVAL

58. The federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes the removal of any action against the "United States or any agency thereof or any officer (<u>or person acting under that officer</u>) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." (Emphasis added.)

59. The Supreme Court instructs that the words "acting under" are "broad" and must be "liberally construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)

---

[4] All patient-identifying information in exemplar documents has been redacted in compliance with the Health Insurance Portability and Accountability Act.

(citation omitted); *see also McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1196 (M.D. Fla. 2006) (federal officer removal statute is "not narrow" or "limited").

60. Unlike the usual presumption against removal, the right of removal under the federal office removal statute "is made absolute whenever a suit in state court is for any act 'under color' of federal office." *Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1427 (11th Cir. 1996) (citations omitted).

61. For a private party to invoke the federal officer removal statute, the party must plead: (a) the party is a person; (b) the party acted under the direction of a federal officer or agency; (c) there is a causal connection between the federal direction and the conduct in question; and (d) the party has a colorable federal defense. *See, e.g.*, *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, No. 18-cv-25460, 2019 WL 1915386, at *1 (S.D. Fla. Mar. 21, 2019); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014); *Einhorn v. Careplus Health Plans, Inc.,* 43 F. Supp. 3d 1268, 1269-70 (S.D. Fla. 2014).

### a. Florida Blue is a "Person"

62. A corporation is a "person" for purposes of the federal officer removal statute. *See Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1391 (citing 1 U.S.C. § 1); *see also Hepstall v. Humana Health Plan, Inc.*, No. 18-0163, 2018 WL 4677871, at *2 (S.D. Ala. July 3, 2018).

### b. Florida Blue "Acts Under" CMS

63. MAOs act under the direction of CMS when denying claims of participating providers for lack of coverage under the Medicare Act or a Medicare Advantage plan. *See Baptist Hosp. of Miami, Inc.*, 2019 WL 1915386, at *2[5] ("[C]overage disputes invoke the Federal Officer

---

[5] In *Baptist Hospital of Miami*, the participating provider alleged the MAO determined services were "not medically necessary or covered under the Medicare Act or the patient's [Medicare Advantage] plan." *Baptist Hosp. of Miami, Inc.*, 2019 WL 1915386, at *1.

13

Removal Statute because in determining whether Medicare provides coverage, the MAO is interpreting and applying the Medicare rules and regulations pursuant to authority delegated to it by CMS. . . . Accordingly, at issue are Defendant's interpretations and applications of Medicare guidelines and manuals. In issuing denials based on those guidelines, Defendant was 'acting under' the authority of CMS, which delegated to Defendant the authority to make those denials pursuant to certain criteria."); *Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1391[6] ("Defendant contracted with CMS to administer Medicare benefits on behalf of the federal government for Medicare enrollees in the Medicare Advantage plans offered by Defendant. . . . Defendant operates pursuant to this contract and pursuant to comprehensive regulations promulgated by CMS."); *see also Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16CV211, 2017 WL 653270, at *5 (N.D. W. Va. Feb. 16, 2017) (collecting cases); *Beaumont Foot Specialists, Inc. v. United Healthcare of Tex., Inc.*, No. 1:15-cv-216, 2015 WL 9257026, at *4 (E.D. Tex. Dec. 14, 2015).

64.  Similarly, MAOs act under the direction of CMS when denying claims of Medicare beneficiaries for lack of coverage under the Medicare Act or a Medicare Advantage plan. *See Hepstall*, 2018 WL 4677871, at *5 ("Having closely examined the cases which have determined the issue, this Court agrees . . . that MAOs . . . are acting under the CMS when providing Medicare benefits to beneficiaries of the Act."); *see also Inchauspe v. Scan Health Plan*, No. 2:17-cv-06011, 2018 WL 566790, at *5 (C.D. Cal. Jan. 23, 2018) ("The Court agrees with the majority of district courts which have held that MAOs administering Part C benefits fall within the category of highly regulated private contractors described in *Watson*.").

---

[6] In *Associates Rehabilitation Recovery*, the participating provider alleged the MAO determined services were "not covered under the Medicare Act or the enrollee's Medicare Advantage plan." *Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1390.

65. In the complaint, Memorial alleges, among other things, that: (1) Florida Blue improperly denied claims, "den[ied] payment . . . for covered services," and "fail[ed] to pay for medically necessary covered services" rendered to Medicare beneficiaries covered under Medicare Advantage plans, including by employing "unreasonable utilization review and medical necessity criteria," *see* Compl. ¶¶ 1, 40(a), 40(d), 48(a), 48(d), 56(b)-(c), 57, 66(b)-(c), 67; (2) Florida Blue recouped overpayments due to lack of coverage under Medicare Advantage plans, *see id.* ¶¶ 1, 40(b), 48(b); and (3) Florida Blue denied coverage under Medicare Advantage plans by failing to authorize "medically necessary covered services," *see id.* ¶¶ 1, 40(c), 48(c).

66. Memorial expressly challenges denial of coverage, recoupments based upon lack of coverage, and denial of authorization under the Medicare Act and Medicare Advantage plans.

67. The Medicare Act requires Florida Blue to cover all services under Parts A and B, generally limits coverage to "reasonable and necessary" services, establishes criteria for Medicare coverage determinations, and provides for mandatory administrative review of MAO decisions denying coverage under Medicare Advantage plans.

68. In performing the acts challenged by Memorial, CMS exercises unusually close, direct, and detailed control over Florida Blue through the CMS Contracts, regulations, manuals, the annual bid process, the Medicare appeals process, audits, and other program directives.

69. In sum, CMS has delegated to Florida Blue legal authority to administer Medicare benefits for Medicare beneficiaries covered under Medicare Advantage plans.  Florida Blue assists the federal government to carry-out and fulfill a basic and necessary governmental function— providing Medicare benefits to Medicare beneficiaries.  In the absence of Medicare Advantage plans, the federal government would have to perform this function itself by administering Medicare benefits to these Medicare beneficiaries under Parts A and B of the Medicare Act.

70. Thus, for purposes of the federal officer removal statute, Florida Blue "acts under" the direction, guidance, and control of CMS.

### c.     There is a Causal Connection to CMS' Direction

71. The Removal Clarification Act of 2011 added "or relating to" in the requirement that the act complained of be "for or relating to any act under color of office."

72. This is a "low standard;" indeed, the acts challenged need not even be the action under federal direction or control. *See Body & Mind Acupuncture*, 2017 WL 653270, at *6.

73. A causal nexus exists here because, but for Florida Blue's contract with CMS to administer Medicare benefits, Florida Blue would not have administered Memorial's claims, and Memorial would have no grounds to assert a cause of action against Florida Blue.

74. A causal nexus also exists here because Memorial challenges denial of coverage for services rendered to Medicare beneficiaries under Medicare Advantage plans. *See Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1391 ("Plaintiff's claims concern Defendant's denial of payments, payments which it denied pursuant to its authority and obligations under federal law."); *see also Body & Mind Acupuncture*, 2017 WL 653270, at *6 ("Whether Humana properly paid Body & Mind or used CMS mandated procedure codes, those acts took place because of or in the course of performing what it was asked to do by the government—pay healthcare providers for services rendered to beneficiaries of its MA plans.") (internal quotation marks omitted); *Hepstall*, 2018 WL 4677871, at *5 ("Plaintiff's claims are, in part, based upon Humana's alleged refusal to pay for benefits that it was contractually obligated to provide. Because his claims are intertwined with Humana's obligations pursuant to regulations that govern its role in administering Part C Medicare claims, the Court finds that the causal nexus requirement has been met.").

### d.     Florida Blue has Colorable Federal Defenses

75. Florida Blue has the colorable defense of federal preemption.

4844-5738-4647.10

76. Part C of the Medicare Act contains an express preemption provision: "The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [MAOs] under this part." 42 U.S.C. § 1395w-26(b)(3).

77. To the extent Memorial challenges coverage decisions governed by the Medicare Act, Florida Blue has the colorable federal defense of express or conflict preemption. *See Einhorn*, 43 F. Supp. 3d at 1270 (removing party had the colorable federal defense of preemption because "[t]he extent to which federal law imposes certain requirements upon [defendant] as a Medicare Advantage plan and whether it may afford it any corresponding protection from liability, are issues of federal law") (internal quotations and citations omitted); *see also* Hepstall, 2018 WL 4677871, at *6 (removing party had the colorable federal defense of preemption); *Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1391-93 (same).

78. Florida Blue also has the colorable federal defense of failure to exhaust administrative remedies.

79. Like a Medicare beneficiary, a participating provider challenging a coverage decision must exhaust administrative remedies before challenging coverage decisions in federal court. *See Assocs. Rehab. Recovery, Inc.,* 76 F. Supp. 3d at 1393 (MAO had a colorable federal defense of failure to exhaust administrative remedies as the participating provider's claims were inextricably intertwined with a claim for reimbursement under the Medicare Act because, "under its contract with CMS, Humana may pay Medicare benefits only for medically necessary services," and under the provider agreement, Humana agreed to pay only for "covered services," which were dependent upon the Medicare Advantage plans); *see also Body & Mind Acupuncture*, 2017 WL 653270, at *4 (holding participating provider raised colorable federal defense of failure to exhaust

17

administrative remedies in dispute over recoupment due to improper billing); *United Behavioral Health v. Maricopa Integrated Health Sys.*, 240 Ariz. 118, 123 (Ariz. 2016) ("Resolution turns on whether UBH correctly applied Medicare standards to determine that continued in-patient care for the [Medicare Advantage] Plan Members was not covered—a matter inextricably intertwined with a claim for benefits and falling within HHS's expertise."); *Ex parte Blue Cross & Blue Shield of Ala.*, 90 So. 3d 158, 164 (Ala. 2012) ("Although framed in terms of a contractual dispute between BCBS and Southern Springs, Southern Springs' claim is, at bottom, a claim that the [Medicare Advantage plan] enrollees are being denied coverage and/or benefits to which they are entitled under the Medicare Act.").

80. Memorial's allegation that, under CMS Pub. 100-16, Medicare Managed Care Manual, Chapter 12 § 70.1, "contract providers have no remedy other than a common law claim for breach of contract to receive payment due to them under their contract with the MAOs," *see* Compl. ¶ 14, is an erroneous conclusion of law. *See United Behavioral Health*, 240 Ariz. At 125 (holding the manual "conflict[s] with the regulations if the payment dispute concerns an organization determination regarding coverage").

81. Indeed, in the Medicare Advantage Amendments, Memorial "agrees to participate in . . . [Florida Blue's] policies and procedures . . . required by CMS for grievances and appeals for Medicare Members." *See* Medicare Advantage Amendments, Ex. 1, § 10.

82. Here, Memorial's claims challenging denials of coverage are inextricably intertwined with claims for reimbursement of Medicare benefits.

83. Indeed, Memorial's alleged harm could be completely remedied by retroactive payment of Medicare benefits.

84. In the complaint, Memorial does not specifically allege it exhausted all available administrative remedies with respect to each claim it asserts.

## SUPPLEMENTAL JURISDICTION

85. Pursuant to 28 U.S.C. §§ 1367(a) and 1441(c), this Court has supplemental jurisdiction over any remaining state law claims, because those claims are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

86. Memorial alleges the same theories of liability with respect to all of its claims.

87. The Court has supplemental jurisdiction over any underpayment claims. *See Baptist Hosp. of Miami, Inc.*, 2019 WL 1915386 at *2 n.2.

88. None of the potential state law claims—common law claims for breach of contract and breach of the implied covenant of good faith and fair dealing—raise novel or complex issues of state law. *See* 28 U.S.C. § 1367(c)(1).

89. Because Memorial appears to assert more Medicare coverage claims than underpayment claims, state law claims do not predominate. *See* 28 U.S.C. § 1367(c)(2).

90. As of the filing of this notice of removal, the Court has not dismissed all federal claims. *See* 28 U.S.C. § 1367(c)(3).

91. There are no "exceptional circumstances" or "compelling reasons" to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(4).

## CONCLUSION

**WHEREFORE**, Defendants Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc. respectfully submit this notice of removal and request that the Court grant them such other and further relief as the Court deems just and proper.

19

**FOLEY & LARDNER LLP**

By: <u>/s/ Justin B. Uhlemann</u>
Justin B. Uhlemann (FNB 568872)
*juhlemann@foley.com*
*marmada-milian@foley.com*
2 South Biscayne Boulevard
One Biscayne Tower, Suite 1900
Miami, Florida 33131
Telephone: 305.482.8400
Facsimile: 305.482.8600

Katlin C. Cravatta (FBN 113258)
*kcravatta@foley.com*
*bshelley@foley.com*
111 North Orange Avenue
Suite 1800
Orlando, Florida 32801
Telephone: 407.423.7656
Facsimile: 407.648.1743

<u>Of counsel</u>
Christopher M. Murphy
*cmurphy@mwe.com*
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Suite 4000
Chicago, Illinois 60606
Telephone: 312.372.2000
Facsimile: 312.984.7700

*Counsel for Defendants Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc.*

4844-5738-4647.10